THE STATE, EX REL. BARRON, v. OHIO MOTOR VEHICLE DEALERS BOARD.

Messrs. Feibel, Feibel, Shamansky & Rogovin, Mr. Richard L. Rogovin and Mr. Leon Friedberg, for relator.

Mr. William J. Brown, attorney general, and Mr. B. Douglas Anderson, for respondent.

STRAUSBAUGH, P.J. This is an original action wherein relator seeks a writ of mandamus ordering respondent to hold a hearing upon the verified complaint filed by relator in accordance with R.C. 4517.33, to make a determination as to whether grounds exist to revoke the license granted Falhaber Datsun, Inc. or in the alternative ordering that said license be revoked based on a finding that respondent abused its discretion by failing to revoke said license.

An examination of the record in this case, which was stipulated by the parties to be a statement of facts and certain pieces of proffered evidence, indicates Falhaber Datsun, Inc. submitted an application for a dealer's license on March 3, 1980. On the following day, said corporation received a dealer's license after the proposed site of the dealership was inspected by an investigator of the Bureau of Motor Vehicles.

Pursuant to R.C. 4517.33, relator filed a verified complaint with respondent alleging that Falhaber Datsun, Inc. was not in compliance with various regulations as set forth in R.C. 4517.01 to 4517.45 or with the rules of the motor vehicle dealers and sales person licensing board and demanding that respondent revoke the dealer's license which, according to relator, was improperly issued to Falhaber Datsun, Inc. On the advice of counsel, respondent at its meeting of April 9, 1980 decided to refer relator's verified complaint to the staff of the Bureau of Motor Vehicles for investigation pursuant to R.C. 4517.31(B), which reads as follows:

"All clerical, inspection, and other agencies for the execution of the powers and duties vested in the board shall be in the bureau of motor vehicles, which shall provide the necessary employees as authorized by section 4501.02 of the Revised Code."

Walter J. Arrowsmith, an administrative assistant at the Bureau of Motor Vehicles, conducted the investigation. Said investigation included interviews with relator, William H. Falhaber, a representative of Nissan Motor Corp., the field investigator of the Bureau of Motor Vehicles who inspected the proposed site of the dealership prior to the issuance of the dealer's license, the chief investigator of the Bureau of Motor Vehicles and the assistant chief of the vehicle registration division of the Bureau of Motor Vehicles. After reviewing the notes and conclusions drawn by Arrowsmith, Dean L. Dollison, Registrar of Motor Vehicles and, pursuant to R.C. 4517.31(A), ex officio secretary and executive officer of respondent, concluded that there were not sufficient grounds upon which to proceed with a hearing concerning the charges alleged in relator's verified complaint. Relator was notified of this conclusion by letter dated April 23, 1980.

Relator's attempt to appeal the decision of respondent, as represented by the letter from Dean L. Dollison, to the Court of Common Pleas of Franklin County failed upon this court's holding that the decision by respondent was not an appealable order. This court also found that, even if the decision not to proceed against Falhaber Datsun, Inc. was a final, appealable order, relator would have no standing to bring the appeal, relator not being adversely affected by such an order. See this court's decision in *Barron* v. *State* (Dec. 2, 1980), No. 80AP-470, unreported.

In *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141 [40 O.O.2d 141] the Supreme Court, in paragraph nine of the syllabus, held:

"Mandamus will lie to permit a private individual to compel a public officer to perform an official act, where such officer is under a clear legal duty to do so, and where the relator has an interest, such as that of a taxpayer, or he is being denied a private right or benefit by reason of such public officer's failure to take action to perform that act which he is under a clear legal duty to perform."

Relator's petition for a writ of mandamus raises the single issue of whether respondent has a duty to conduct a hearing upon the verified complaint filed by relator so as to determine whether or not the dealer's license issued to Falhaber Datsun, Inc. should be revoked. Relator contends that R.C. 4517.33 mandates that an investigation and a proper administrative hearing be held by respondent to consider the evidence and determine the issues raised by the verified complaint. Respondent argues that R.C. 4517.33 requires only that an investigation be held upon the filing of a verified petition and that the investigation by Arrowsmith on behalf of respondent fulfilled said requirement. Additionally, respondent contends that in the absence of a clear legal duty of respondent to conduct a hearing, relator's petition for a writ of mandamus must be denied.

At the center of this dispute between the parties is R.C. 4517.33, which in pertinent part states as follows:

"The board may make rules governing its actions relative to the suspension and revocation of dealers', motor vehicle leasing dealers', distributors', auction owners', and salespersons' licenses and may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee under sections 4517.01 to 4517.45 of the Revised Code. The board shall suspend or revoke or notify the registrar to refuse to renew any dealer's, motor vehicle leasing dealer's, distributor's, auction owner's, or salesperson's license if any ground existed upon which the license might have been refused, or if a ground exists which would be cause for refusal to issue a license."

A reading of that portion of R.C. 4517.33 quoted above allows us to conclude that respondent is under a clear legal duty to investigate the conduct of any licensee upon the filing of a verified complaint. In the case now before us respondent, upon the receipt of relator's verified complaint, adopted the opinion of its counsel and ordered that an investigation be conducted by the Bureau of Motor Vehicles. Said delegation was in compliance with R.C. 4517.31(B) which states as follows:

"All clerical, inspection, and other agencies for the execution of the powers and duties vested in the board shall be in the bureau of motor vehicles, which shall provide the necessary employees as authorized by section 4501.02 of the Revised Code."

A review of the record before us indicates that the report of the investigation conducted by Arrowsmith was made available to respondent but only reviewed by Dean Dollison, Registrar of the Bureau of Motor Vehicles and ex officio secretary and executive officer of respondent. It appears from the record that Dollison alone concluded that relator's verified complaint should be dismissed without further action. Based upon those undisputed facts we find that respondent has complied with R.C. 4517.33 but that the procedure invoked by respondent is violative of relator's due process rights.

Resolution of this issue requires that we define the nature of relator's interest in the procedures of the respondent. R.C. 4517.33 allows *any person* to file a verified complaint in writing with respondent objecting to the registrar's grant or revocation of a dealer's license. This court previously held in *Barron, supra,* that a person filing a verified complaint pursuant to R.C. 4517.33 does not have standing to appeal a final order of respondent pursuant to R.C. 119.12. However, we find that the legislative intent, found in the language of R.C. 4517.33, was to grant to those who filed a verified complaint the right to have the complaint investigated and the right to have *respondent* determine whether the allegation contained in the complaint can serve as a basis for respondent to begin an action to modify, suspend or revoke the license of the dealer in question. While the

legislature has provided that respondent may delegate all powers and duties vested in it to the Bureau of Motor Vehicles, due process requires that the determination of whether the allegations contained in a verified complaint may serve as a basis for further proceedings against a dealer must be made by respondent, based on the results of the investigation. Fundamental due process also requires that, where the agency against which a complaint is made, is given sole authority to investigate such a complaint, the complainant be given a hearing before an independent board, *i.e.,* respondent.

The facts of this case indicate that relator filed a verified complaint alleging that Falhaber Datsun, Inc. was improperly issued a dealer's license by the Bureau of Motor Vehicles. Once the verified complaint was filed, the record indicates that the investigation was conducted by an employee of the Bureau of Motor Vehicles and that the Registrar of the Bureau of Motor Vehicles reviewed the report of the investigation and concluded that there was no evidence to support relator's complaint. Such a procedure does not comply with the intent of the legislature as manifested by the language in R.C. 4517.33, nor with the due process rights of relator.

While relator's interest in the proceedings of respondent is limited, due process requires that, if respondent delegates the investigation to the Bureau of Motor Vehicles, there must be a hearing in which the respondent must determine whether relator's verified complaint presents probable cause for respondent to engage in a proceeding against the dealer in question, based on the evidence arising from the investigation.

The probable cause hearing is important in two respects. First, it assures all participants that the investigation conducted by the Bureau of Motor Vehicles was complete. Secondly, a probable cause hearing before respondent guarantees that an impartial authority has reviewed results of the investigation and made a decision as to whether to continue with proceedings against the person accused in a verified complaint.

As previously stated, upon the filing of a verified complaint relator's interest in the subsequent proceedings is limited. Relator claims that, upon the filing of a verified complaint, relator is entitled to participate in a hearing before respondent conducted pursuant to R.C. Chapter 119. We do not agree. Relator's position as a complainant pursuant to R.C. 4517.33 is not equivalent to that of a party as defined by R.C. 119.01(G), set forth below:

" 'Party' means the person whose interests are the subject of an adjudication by an agency."

This court has previously ruled in *Barron, supra,* that relator's interests in the proceeding before respondent did not rise to that of a person afforded an adjudication hearing pursuant to R.C. Chapter 119, for the purposes of appeal. Relator's interest in the subsequent proceedings of respondent following the filing of a verified complaint does not rise to the level of that which would require a hearing within the requirements of R.C. Chapter 119.

R.C. 4517.33 specifically gives respondent the discretion to make rules governing its action relative to the suspension and revocation of a dealer's license. Pursuant to that authority, respondent should make rules governing the hearing whereby it is determined whether the allegations contained in the verified complaint may serve as a basis for further proceedings against the dealer in question.

Accordingly, relator is hereby allowed a writ of mandamus ordering respondent to conduct a hearing to determine whether there is evidence to support further action against Falhaber Datsun, Inc.

*Writ allowed.*

MOYER, J., concurs.

458

WHITESIDE, J., dissents.

WHITESIDE, J., dissenting. Being unable to concur in the conclusions reached by the majority, I must respectfully dissent.

First, I cannot concur in the finding that relator is entitled to a due process hearing. In my view, relator has no due process rights involved, being only the complainant of a complaint filed pursuant to R.C. 4517.33, alleging that a license had been improperly granted to another. As we have previously held, relator is not a party to the investigation contemplated by R.C. 4517.33 and it necessarily follows that he had no due process rights with respect to said investigation, rather, his rights are merely statutory. Relator has a right to have his complaint acted upon by respondent in the proper manner regardless of what the outcome may be.

Second, I cannot concur in the determination of the majority that respondent board can delegate its responsibilities under R.C. 4517.33 to an administrative assistant employed by the Bureau of Motor Vehicles or to the registrar. R.C. 4517.31(B) relied upon by the majority, has no application. First, said statute does not provide for delegation of responsibilities but rather provides that:

"All clerical, inspection, and other agencies for the execution of the powers and duties vested in the board shall be in the bureau of motor vehicles, which shall provide the necessary employees * * *."

Here we are concerned with an investigation, not clerical or inspection functions. Application of the doctrines *ejusdem generis* as well as that of *expressio unius est exclusio alterius* clearly indicates that investigations are not included within the contemplation of R.C. 4517.31(B). Had the General Assembly intended to provide for delegation of the duty to investigate conferred upon the board by R.C. 4517.33 to the bureau under the provisions of R.C. 4517.31(B), the General Assembly would have and could have expressly so provided. Reading the two statutes *in pari materia,* the only conclusion that can reasonably be reached is that the board has no power to delegate its R.C. 4517.33 duty to investigate to some other person or agency. This does not necessarily mean that the board may not appoint someone to obtain or take evidence and report the same to the board so that the board may make the proper factual determination predicated upon such evidence.

Respondent contends that since R.C. 4517.33 uses the word "investigate" no hearing is contemplated. This is overly simplistic. Broadly speaking, "investigate" or "investigation" encompasses a multitude of acts from asking a simple question to a complete trial or adjudicatory hearing. In a broad sense, every hearing is an investigation, although not every investigation involves a hearing.

Webster's Third New International Dictionary defines "investigate" as "inquire into systematically" or "to subject to an official probe" or "to conduct an official inquiry." The same dictionary defines investigation as "the action or process of investigating" or "detailed examination" or "a searching inquiry." The American Heritage Dictionary defines investigate as "to observe or inquire into in detail." That dictionary defines investigation as "the act, process or an instance of investigating; inquiry." Further insight might be gained from the discussion of the word "hearing" in Black's Law Dictionary, which concludes with a statement:

"Hearings are extensively employed by both legislative and administrative agencies and can be adjudicative or merely investigatory. Adjudicative hearings can be appealed in a court of law. * * *"

Perhaps the important distinction is between investigatory and adjudicatory hearings. An investigation is not an adjudication but may lead to an adjudication. The word "investigation" is

sometimes used in connection with judicial proceedings. See R.C. 2945.40; *State, ex rel. Smilack,* v. *Bushong* (1952), 93 Ohio App. 201, 212 [50 O.O. 499]. Accordingly, the meaning of investigate or investigation in this case depends upon usage thereof in R.C. 4517.33 which provides in pertinent part:

"The motor vehicle dealers board shall hear appeals which may be taken from an order of the registrar of motor vehicles, refusing to issue a license. * * * In such appeals the board may make investigation to determine the correctness and legality of the order of the registrar. "* * *

"The board * * * may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee under Sections 4517.01 to 4517.45 of the Revised Code. The board shall suspend or revoke or notify the registrar to refuse to renew any dealer's, motor vehicle leasing dealer's, distributor's, auction owner's, or salesperson's license if any ground existed upon which the license might have been refused, or if a ground exists which would be cause for refusal to issue a license."

The board apparently was advised to bifurcate the matter and first to conduct an investigation and then to conduct an adjudicatory hearing if the investigation revealed probable cause for revocation of the license involved. There is nothing in the statute, nor in any rule adopted by the board, providing for such a bifurcated procedure. Rather, the mandate of R.C. 4517.33 is clear that "[t]he board * * * shall * * * investigate the conduct of any licensee" when a verified complaint is filed. The next sentence states what the action of the board shall be if the investigation reveals either that "any ground existed upon which license might have been refused, or if a ground exists which would be cause for refusal to issue a license." There is no provision for a two-step process. What is involved is that the board investigate and determine what action to take, that is, either dismiss the complaint, or suspend, revoke, or refuse to renew the license involved. This does not mandate a hearing at which relator may participate. See R.C. 9.84, 119.06, 119.07 and 121.22(G). What is contemplated by these statutes is that the licensee be given an opportunity for an adjudicatory hearing if he so desires, before an order revoking or suspending a license is issued. Said statutes do not require that a complainant in the position of relator be given an opportunity for such a hearing.

The essence of the requirements of R.C. 4517.33 has been in the statutes of Ohio for some forty-five years, formerly as R.C. 4517.12, even though the name of the board involved has changed. While the words "investigate" and "investigation" have been used in these statutes through all the years, it is clear that more than a cursory examination is involved. Respondent concedes at page 29 of its brief that: "* * * it is unquestioned that the board has the duty to conduct an investigation upon the filing of a verified complaint under R.C. 4517.33."

Respondent goes on to state, however, that the board lacks discretion "to determine which complaints, after investigation, merit the issuance of formal charges * * * and the holding of an adjudicatory hearing." Accepting respondent's propositions, it is still the duty of the board to investigate the charges made by the verified complaint. Here, the board did not investigate but instead delegated the responsibility. The usage of the word "investigate" is given clearer meaning when it is recognized that with respect to appeals the preceding paragraph of the same section provides that "the board may make investigation to determine the correctness and legality of the order." In this section, the investigation is for a purpose of making a determination. That determination must be made by the board. The board may well find after investigation that no ground existed upon

which the license could have been refused but it is the responsibility of the board to make such determination predicated upon the investigation. Here the board has not done so. While the investigation may have been commenced, it is not complete.

While I dissent from the issuance of a writ of mandamus ordering respondent board to conduct a hearing upon the verified complaint, I would find that a limited writ of mandamus should issue requiring the board to comply with R.C. 4517.33 and investigate the conduct of the licensee involved because of the filing of the verified complaint by relator.